[No. B154678. Second Dist., Div. Eight. Oct. 21, 2002.]

GRAFTON MASON, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

**COUNSEL**

Walter L. Gordon III for Plaintiff and Appellant.

Bill Lockyer, Attorney General, W. Dean Freeman and Diane Spencer Shaw, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

## BOLAND, J.—

### SUMMARY

The Real Estate Recovery Program permits persons victimized by dishonest real estate licensees to obtain compensation from a Recovery Account funded by real estate license fees. In order to recover, an aggrieved claimant must obtain a final judgment against the licensee based upon the licensee's fraud or conversion of trust funds in connection with licensed activities, and must file an application with the Department of Real Estate no later than one year after the judgment has become final. [o]

Here, we decide that when an aggrieved claimant obtains a final judgment against the estate of a deceased broker based on the broker's conversion of funds, the claimant must file his application within one year of judgment, and may not delay filing pending the issuance of probate orders settling the broker's estate.

### FACTUAL AND PROCEDURAL BACKGROUND

Grafton Mason is a contractor licensed by the State of California. In 1992 he contracted with Wendell Henderson, a licensed real estate broker, to perform repairs on a house. Mason deposited $69,000 in an escrow account maintained by Henderson, in lieu of a performance bond. After the repair work was completed, Mason sought the return of his deposit, but received only $25,000 from the account. Henderson died shortly thereafter.

Mason opened a probate estate for Henderson, became administrator of the estate, and filed a creditor's claim. The probate court permitted Mason to sue the estate, and on February 13, 1996, a default judgment was entered against the estate and Henderson's wife in the amount of $52,434 ($44,000 plus interest of $8,434). The judgment included findings of fact and conclusions of law, including a finding that Henderson, a licensed broker, committed fraud and conversion of Mason's $44,000 in connection with licensed activities.

While he was administrator of Henderson's estate, Mason sought recovery of all the assets Henderson might have owned, and eventually recovered $4,000 from the estate. On June 2, 2000, the probate court issued an order settling the final account and ordering distribution of the $4,000 balance in the estate to Mason, in partial payment of Mason's judgment against the estate.

On August 3, 2000, Mason submitted an application to the Department of Real Estate for payment from the Recovery Account. The application was denied on November 2, 2000, by operation of law.[1] On December 19, 2000, Mason filed an application seeking a court order directing payment from the Recovery Account. The department opposed the application.

A trial was held on September 25, 2001. Mason testified, and the court took judicial notice of the probate file of the Henderson estate and the court file in Mason's civil action against the estate. Mason's application was denied. The court concluded Mason failed to prove the claim was timely filed under Business and Professions Code section 10471, failed to prove fraud on the part of Henderson, and failed to prove the matter arose directly out of a transaction involving acts for which a real estate license was required.

Notice of appeal was filed on November 19, 2001, and is deemed filed on November 28, 2001, the date of entry of judgment. (Cal. Rules of Court, rule 2(d).)

## DISCUSSION

The Recovery Account is a fund administered by the Department of Real Estate. Its purpose is to reimburse certain losses incurred by members of the public as a result of fraudulent conduct by real estate licensees. The program applies to claimants who have obtained a final judgment against a licensee based upon the licensee's fraud or conversion of trust funds, arising from a transaction in which the licensee performed acts requiring a real estate license. (Bus. & Prof. Code, §§ 10470 et seq.)[2] A claimant must file an application with the Department of Real Estate no later than one year after the judgment becomes final. (*Id.,* § 10471, subd. (b).)[3]

■ The courts have consistently held that Business and Professions Code section 10471 is a remedial statute, intended to protect members of the

---

[1] If the commissioner fails to render a final written decision within 90 days of receipt of a completed application, the claim is deemed denied. (Bus. & Prof. Code, § 10471.3.)

[2] "When an aggrieved person obtains . . . a final judgment . . . against a defendant based upon the defendant's fraud, misrepresentation, or deceit, made with intent to defraud, or conversion of trust funds, arising directly out of any transaction in which the defendant, while licensed under this part, performed acts for which a real estate license was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account . . . of the amount unpaid on the judgment that represents an actual and direct loss to the claimant in the transaction." (Bus. & Prof. Code, § 10471, subd. (a).)

[3] The application must contain numerous items of information and representations from the claimant. (Bus. & Prof. Code, § 10471, subd. (c).) These include a description of claimant's searches and inquiries concerning the judgment debtor's assets, an itemized valuation of

public who are victimized by dishonest licensees. " '[R]elief will be granted under section 10471 unless to do so is clearly forbidden by statute . . . ,' " and when its meaning is doubtful, section 10471 will be construed " 'to advance or extend the remedy provided, and to bring within the scope of the law every case which comes clearly within its spirit and policy. . . .' " (*Doyle v. Department of Real Estate* (1994) 30 Cal.App.4th 893, 896-897, [36 Cal.Rptr.2d 193], citations omitted.) On the other hand, "a plaintiff seeking recovery has the burden of showing compliance with the statute," and courts "may not disregard the explicit provisions of section 10471 . . . ." (*Stout v. Edmonds* (1986) 180 Cal.App.3d 66, 69 [225 Cal.Rptr. 345].)

In this case, we conclude Mason failed to timely file his application with the Department of Real Estate. Under Business and Professions Code section 10471, an application "shall be delivered . . . to . . . the department not later than one year after the judgment has become final." (Bus. & Prof. Code, § 10471, subd. (b).) The application process after obtaining a judgment is specifically described in the statute: "When an aggrieved person obtains . . . a final judgment . . . against a defendant based upon the defendant's fraud . . . or conversion of trust funds, . . . the aggrieved person may, upon the judgment becoming final, file an application . . . for payment from the Recovery Account . . . of the amount unpaid on the judgment that represents an actual and direct loss to the claimant . . . ." (*Id.*, § 10471, subd. (a).)

Mason obtained a judgment on February 13, 1996, but did not file his application until December 19, 2000. He argues the one-year filing requirement was not triggered by the February 13, 1996 judgment, and did not begin to run until entry of the June 2, 2000 probate court order, which settled Henderson's estate and distributed the balance remaining in the estate to Mason "in partial payment of the $52,434 judgment against decedent." Mason contends the 1996 civil judgment was not a "final judgment" of his claim, because the judgment was against Henderson's estate, and because "the claim itself had to still receive the approval of the probate court before [Mason] had [the] right to the money." Mason's arguments fail for several reasons.

First, Mason's interpretation would require us to reach conclusions that are inconsistent with the unambiguous language of section 10471. It would compel us either to find that the February 1996 judgment was not a final judgment or to create an exception to the "final judgment" language in the

assets discovered, and the results of claimant's actions to have the assets applied to satisfaction of the judgment. (*Id.*, § 10471, subd. (c)(7)(D).)

statute. While the statute is remedial and must be construed broadly, we can neither disregard its plain language nor add to its terms. Consequently, we are bound to conclude that the February 1996 judgment was a final judgment as described in the statute, which contains no exceptions.[4]

Second, the Probate Code did not, as Mason argues, require further approval of Mason's claim by the probate court after he obtained a final judgment against Henderson's estate. "When a money judgment against a personal representative in a representative capacity becomes final, it conclusively establishes the validity of the claim for the amount of the judgment." (Prob. Code, § 9301.) The only difference between a final judgment against a living person and one against an estate is that the latter is payable out of property in the decedent's estate in the course of administration (*ibid.*), and the former is enforceable under the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.). While a judgment against an estate is not paid in full if the estate is insufficient or other claims are entitled to a priority, the same is true for a judgment against any other defendant; recovery is limited by the extent of the judgment debtor's assets. In short, Mason confuses the issue of finality with satisfaction of judgment. Mason had no "right to the money" until the estate was settled and it was determined whether funds were available to satisfy his judgment. However, his position was indistinguishable analytically from that of any other judgment creditor compelled to locate available assets in order to enforce or satisfy a judgment. It is the finality of the judgment for fraud or conversion, not the finality of subsequent procedures to enforce the judgment, which triggers the limitations period.

Third, the final distribution order of the probate court may be construed as a "final judgment." (*Bacon v. Bacon* (1907) 150 Cal. 477, 486 [89 P. 317] [under predecessor statutes "the decree of distribution should have the same force and effect as other final judgments"].) It is not, however, a "final judgment . . . based upon the defendant's fraud . . . ." It is a "final judgment" settling the administrator's final account, approving the administrator's report, and distributing the $4,000 in the estate to Mason as "a creditor of the Decedent with an unpaid judgment . . . ." Moreover, the distribution order as a "final judgment" does not comport with the remainder of the statutory language. The statute allows Mason, "upon the judgment

---

[4]Mason argues the statute did not anticipate claims against a deceased broker. However, the situation would be no different if Henderson had been alive when Mason sued, and had died after Mason obtained a final judgment against him. "[A]fter the death of the decedent all money judgments against the decedent or against the personal representative on a claim against the decedent or estate are payable in the course of administration and are not enforceable against property in the estate of the decedent under the Enforcement of Judgments Law . . . ." (Prob. Code, § 9300.)

becoming final, [to] file an application . . . for payment from the Recovery Account . . . of the amount unpaid on the judgment . . . ." (Bus. & Prof. Code, § 10471, subd. (a).) However, there is no "amount unpaid" on the probate court's order distributing $4,000 to Mason; the only "amount unpaid" is on the February 1996 judgment. Thus, the distribution order does not comport with the statutory description.

In sum, we are not at liberty to interpret the statute other than according to its unambiguous language. Only the February 1996 judgment conforms to the terms of the statute. Accordingly, Mason was required to deliver his application for payment from the Recovery Account to the Department of Real Estate "not later than one year after the judgment [became] final." He failed to do so and, therefore, is not eligible for payment from the Recovery Account.[5]

## DISPOSITION

The judgment is affirmed. The Department of Real Estate is to recover its costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 2003.

---

[5]In view of our conclusion on this issue, we need not consider Mason's contentions the trial court erred in finding Mason both failed to prove fraud and failed to prove the transaction involved acts for which a real estate license was required.